357 So.2d 1084 (1978)
STATE of Louisiana
v.
Albert Jennings "Red" MALVO.
No. 58918.
Supreme Court of Louisiana.
April 10, 1978.
Rehearing Denied May 19, 1978.
*1085 James C. McInnis, Lake Charles, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Frank T. Salter, Jr., Dist. Atty., A. J. Fazzio, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
On January 17, 1975 defendant was indicted by the Calcasieu Parish Grand Jury for distribution of heroin. He was tried by jury, found guilty as charged, and sentenced to life imprisonment at hard labor. On appeal seven arguments on assignments of error are urged for a reversal of the conviction.
On July 5, 1974, shortly before midnight, an undercover agent for the Calcasieu Parish sheriff's department, Deputy Joseph Payne, met with Deputy Theos Duhon at the sheriff's office. Duhon searched Payne for drugs and money and then gave him $50.00 to use for a drug purchase. Payne left and at approximately 12:10 the next morning met with the defendant on Enterprise Boulevard in Lake Charles. The defendant offered to sell a "paper" of heroin to Payne and instructed the officer to follow him to his residence on North Goos Boulevard in Lake Charles. When they arrived at the residence, the defendant and Payne entered and Payne purchased a small amount of heroin for $25.00. Payne then left, later meeting Deputy Duhon and delivering the drug packet. The defendant was arrested on January 16, 1975.
Assignment of Error No. 1
Defendant contends that the trial court erred in denying a motion to quash that alleged that the defendant had been denied due process through the more than six month delay between the commission of the offense and the indictment.
The issue presented is not one arising under the speedy trial provisions of the Sixth Amendment of the United States Constitution and Art. 1, § 16 of the La. Const. of 1974; the constitutional guarantees to a speedy trial are not invoked until a citizen has become an accused, either by arrest or indictment. United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); State v. Fraise, 350 So.2d 154 (La. 1977); State v. Neyrey, 341 So.2d 319 (La.1976). Instead, the fundamental rights to due process and a fair trial are raised by defendant's assignment.
The United States Supreme Court was presented with a similar issue in United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). In that case the defendant was indicted for several federal offenses more than eighteen months after they allegedly were committed. The defendant successfully argued in the district court and in the Court of Appeals that he was denied due process because the delay was unnecessary and prejudiced his defense. The Supreme Court, on review, readily disposed of the defendant's argument that due process requires the dismissal of all prosecutions in which the defendant suffers prejudice as a result of the pre-indictment delay, stating:
". . . To support that proposition respondent relies on the concluding sentence of the Court's opinion in Marion where, in remanding the case, we stated that `[e]vents at the trial may demonstrate actual prejudice, but at the present time appellees' due process claims are speculative and premature.' 404 U.S., at 326, 92 S.Ct. 455, 30 L.Ed.2d 468. But the quoted sentence establishes only that proof of actual prejudice makes a due process claim concrete and ripe for adjudication, not that it makes the claim automatically valid. Indeed, two pages earlier in the opinion we expressly rejected the argument respondent advances here:
'[W]e need not . . . determine when and in what circumstances actual prejudice resulting from preaccusation delay requires the dismissal of the prosecution. Actual prejudice to the defense of a criminal case may result from the *1086 shortest and most necessary delay; and no one suggests that every delay-caused detriment to a defendant's case should abort a criminal prosecution.' Id., at 324-325, 92 S.Ct. 455, 30 L.Ed.2d 468. Thus Marion makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." 431 U.S. at 789, 97 S.Ct. at 2048-2049, 52 L.Ed.2d at 759.
The court, after noting that the investigation of Lovasco was largely unproductive during the last seventeen months before indictment, rejected a rule which would require the government to file charges as soon as it had accumulated sufficient evidence to prove guilt beyond a reasonable doubt, stating that it would produce the following undesirable results:
"First, compelling a prosecutor to file public charges as soon as the requisite proof has been developed against one participant on one charge would cause numerous problems in those cases in which a criminal transaction involves more than one person or more than one illegal act. In some instances, an immediate arrest or indictment would impair the prosecutor's ability to continue his investigation, thereby preventing society from bringing lawbreakers to justice. In other cases, the prosecutor would be able to obtain additional indictments despite an early prosecution, but the necessary result would be multiple trials involving a single set of facts. Such trials place needless burdens on defendants, law enforcement officials, and courts.
Second, insisting on immediate prosecution once sufficient evidence is developed to obtain a conviction would pressure prosecutors into resolving doubtful cases in favor of earlyand possibly unwarranted prosecutions. The determination of when the evidence available to the prosecution is sufficient to obtain a conviction is seldom clear-cut, and reasonable persons often will reach conflicting conclusions.
. . . . .
Finally, requiring the Government to make charging decisions immediately upon assembling evidence sufficient to establish guilt would preclude the Government from giving full consideration to the desirability of not prosecuting in particular cases. The decision to file criminal charges, with the awesome consequences it entails, requires consideration of a wide range of factors in addition to the strength of the Government's case, in order to determine whether prosecution would be in the public interest. Prosecutors often need more information than proof of a suspect's guilt, therefore, before deciding whether to seek an indictment.. . ." 431 U.S. at 793, 97 S.Ct. at 2050-2051, 52 L.Ed.2d at 761-762.
Recognizing that Lovasco may have in fact suffered some degree of prejudice as a result of the delay, the court nevertheless held that ". . . to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." 431 U.S. at 796, 97 S.Ct. at 2052, 52 L.Ed.2d at 763.
This court was presented with the issue of pre-arrest delay in State v. Stetson, 317 So.2d 172 (La.1975). There a period of seven months lapsed between an alleged heroin sale and the defendant's arrest. While it is true that we rejected the defendant's due process argument on the specific ground that no proof of prejudice was offered, we did not hold, as defendant Malvo contends, that a showing of prejudice alone is enough to demonstrate a denial of due process. Instead, we stated:
"Actually, prejudice to the defense of a criminal case may result from the shortest and most necessary delay; yet, no one suggests that every delay causing detriment to a defendant's case should abort a criminal prosecution. To accommodate the sound administration of justice to the defendant's rights to due process and a fair trial will necessarily involve a deliberate judgment based on the facts and *1087 circumstances of each case. It would be unwise at this juncture to attempt to forecast those decisions. United States v. Marion, supra." 317 So.2d at 175-176.
The proper approach in determining whether an accused has been denied due process of law through a preindictment or pre-arrest delay is to measure the government's justifications for the delay against the degree of prejudice suffered by the accused.
Testimony at the motion to quash hearing in the present case showed that the defendant sold heroin to an undercover agent, Deputy Payne. At the time of the transaction, Payne was investigating narcotics traffic in the immediate Lake Charles area. After the defendant's sale, the focus of the investigation gradually shifted to the western and northern parts of Calcasieu Parish and to east Texas, in conjunction with Texas authorities. The protection of Payne's undercover status was necessary to the success of the operation.
The defendant contends that he was prejudiced by the government's actions because a material defense witness, Joseph Miller, died during the seven month delay. At the hearing the defendant testified that during much of 1974 he spent a considerable number of days job hunting with Miller and that if he were now alive he could probably help determine what the defendant was doing on the night of the alleged offense.
Balancing the interests of the government in continuing a successful undercover operation against the minimal prejudice demonstrated, we conclude that the defendant was not denied due process through the delay. It is significant that it was not shown that the "material" witness who was no longer available for trial in fact had testimony which would aid defendant's case. Instead, all that is known is that the witness might have been able to assist the defendant in tracing his actions on the night of the offense. While the State's interest in protecting its investigations will not be sufficient to justify a delay which causes significant prejudice to an accused, we do not find such prejudice in this case.
This assignment is without merit.
Assignment of Error No. 2
Defendant contends that it was error for the trial court to fail to quash his indictment on grounds that the grand jury returned fifty-two other indictments on the same day his was returned. He argues that the spirit of Art. 1, § 15 of the La.Const. of 1974 was violated because the grand jury could not have taken adequate time to consider the defendant's case.
The assignment is without merit. First, it does not appear from the record that the defendant raised this issue before the trial court. Second, even if the issue was presented to the trial court, there is no showing that the grand jury did not follow the proper procedures for indictment. Accordingly, no error is shown.
Assignment of Error No. 3
Abandoned on appeal.
Assignment of Error No. 4
Defendant contends that it was error for the trial court to deny his motion to reduce bond. The issue of excessive bail is rendered moot after conviction and sentence. State v. McDaniel, 340 So.2d 242 (La.1976). Accordingly, nothing is presented for review on this appeal.
Assignment of Error No. 5
During the recross-examination of Deputy Payne at trial, the defense counsel asked, "Do you realize the penalties carried if this man is found . . . guilty today?" The State's objection to the question was sustained by the trial court. The defendant now contends that it was error for the court to sustain the objection because the required sentence for the offense for which he was tried was life imprisonment and that it was prejudicial to prevent the jury from being informed of that sentence.
The issue of whether the defendant has a right to have the jury informed of the possible sentences for the offense charged *1088 has frequently been raised in recent cases and is the subject of considerable disagreement. See State v. Hodges, 349 So.2d 250 (La.1977); State v. Milby, 345 So.2d 18 (La. 1977); State v. Prater, 337 So.2d 1107 (La. 1976); State v. Chatman, 337 So.2d 1106 (La.1976); State v. Unzueta, 337 So.2d 1102 (La.1976).[1]
That issue, however, is not properly before us. The question asked of Deputy Payne, when viewed in context, was clearly intended as a means of impressing upon the officer the severity of his charges and of testing his credibility; it does not appear that it was intended to convey to the jury the severity of the penalty for the offense.[2] Further, the defendant did not object to the failure of the trial judge to instruct the jury on the penalty. Under these circumstances, we conclude that the ruling was based on the scope of recross-examination; we can assume the officer knew the serious nature of the accusation.
This assignment is without merit.
Assignment of Error No. 6
The defendant contends that the trial court erred in failing to instruct the jury that the State has the burden to prove every act alleged in the indictment and in the answers to the bill of particulars. The issue apparently arose out of the confusion of the State witnesses as to the exact municipal address number of the house in which the drug transaction took place.
We find defendant's assignment to be without merit. The trial court properly instructed the jury as to the State's burden to prove every element of the offense charged. The defendant failed to either make a request for a special jury charge or object to the jury charge given by the trial court.
Assignments of Error Nos. 7 and 8
The defendant contends that the trial court erred in not declaring a mistrial after the jury was deadlocked and could not return a verdict.
The record does not support the defendant's contention that the jury was deadlocked. After the jury returned a second time to the courtroom without a verdict, the following occurred:
"THE COURT: Mr. Bailey, I have received a message from the Court Deputy that he tells me that you have informed him to the effect that the jury, in your opinion, is hopelessly deadlocked, and that you are unable to arrive at a verdict. Now, is that a correct message or not?
MR. BAILEY: Yes, Your Honor.
THE COURT: In your opinion, Mr. Bailey, would any good purpose be served by your continuing in your deliberations or not, or do you think that it is hopeless?
MR. BAILEY: Your Honor, I think that we have . . .
THE COURT: And, Mr. Bailey, don't. . . don't tell me so . . . anything about numbers, or about what any particular problems are, or anything else. I simply want to know whether or not that the jury feels that it has . . . that no good purpose would be served by continuing, you know, with their deliberations.
MR. BAILEY: I think we should continue deliberations.
THE COURT: What is that, sir?
MR. BAILEY: I think we should continue deliberations.
THE COURT: Oh, you do think that you should continue . . .
MR. BAILEY: Yes, sir, I do.
THE COURT: All right, sir. Then you will be permitted then to continue your deliberations. If you have any further messages, or anything, or if you are able to reach a verdict, notify the Court Deputy. *1089 If you should feel like you have exhausted all possibilities of arriving at a verdict, then send that message to me also."
It is clear that the jury was not in fact deadlocked and that the trial court did not err in failing to declare a mistrial. Furthermore, the defendant made no request for a mistrial at the time. Accordingly, the assignments are without merit.
Assignment of Error No. 9
After trial and sentencing, the defendant filed the following Assignment of Error in the trial court:
"The Jury's verdict was contrary to the law and the evidence. The trial judge should have directed a verdict of acquittal at the close of the evidence, and to not so order was error. Designation of entire record transcript desired."
In brief on appeal the defendant contends that the trial court erred in certain evidentiary rulings and that the error is discoverable on the face of the record.
Evidentiary rulings are not discoverable on the face of the record (C.Cr.P. 920) and the failure to assign error to the ruling constitutes a failure to present the issue on appeal. This assignment is without merit.
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
NOTES
[1] It is the opinion of the writer that the jury should be informed of the possible penalties for the offense charged.
[2] The question could have been answered simply "yes" without the severity of the penalty being revealed to the jury. From this it is reasonable to assume that the defense attorney merely intended to test the credibility of the witness and did not intend to inform the jury of the consequences of a conviction.