871 So.2d 563 (2004)
STATE of Louisiana
v.
Michael BARTLEY.
No. 03-KA-1382.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 2004.
*565 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Ralph C. Cox, III, Assistant District Attorneys, Gretna, LA, for Appellee.
Arcenious F. Armond, Jr., Gretna, LA, for Appellant.
Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
CLARENCE E. McMANUS, Judge.

STATEMENT OF THE CASE
The Jefferson Parish District Attorney filed a bill of information charging the defendant, Michael Bartley, with distributing cocaine within 1000 feet of Ames Elementary *566 School, a violation of LSA-R.S. 40:981.3. The defendant pled not guilty at arraignment.
On June 26, 2003, the trial judge denied defendant's motions to continue the trial, to quash the bill of information, and to suppress the identification. Thereafter, defendant proceeded to trial before a twelve-person jury, which found defendant guilty as charged. On July 25, 2003, the trial judge sentenced defendant to 22½ years of imprisonment at hard labor, with the first two years of the sentence to be served without benefit of parole, probation or suspension of sentence. That same day, the State filed a multiple offender bill of information alleging defendant to be a third felony offender. The defendant entered a plea of "not guilty." However, on November 14, 2003, defendant stipulated that he was a second felony offender after being advised of his multiple offender rights. The original sentence was vacated and the trial judge imposed a multiple offender sentence of 22½ years at hard labor without benefit of probation or suspension of sentence. Defendant then filed this timely appeal.

FACTS
On February 8, 2001, Agent Kim Blanche, whose undercover name was Louise Stone, was driving an unmarked vehicle equipped with video recording equipment and an audio transmitter. Agent Blanche was in the 6200 block of Field Street in Marrero when a black male flagged her down. When she stopped the car, Agent Blanche asked for two "twenties," which is two pieces of crack cocaine. The man, who referred to himself as "Big Mike," told Agent Blanche that he would get it for her. The man walked away, and returned a few moments later with objects admitted into evidence as State's Exhibit 1. Forensic expert Charles Krone testified that the objects were two rocks that weighed .2 grams and tested positive for cocaine. Agent Blanche said she did not measure the distance from the school to the location of the purchase, but she said that the school was directly behind Field Street.
After the transaction, Agent Blanche went to a pre-arranged location and turned the evidence over to Agent Lisa Thornton, who performed a field test on the substance, which was positive for the presence of cocaine. Later, Agent Thornton watched the videotape of the undercover transaction and recognized defendant as the seller of the crack cocaine. Agent Thornton compiled a photographic lineup, which she showed to Agent Blanche. Agent Blanche positively identified defendant both in a photographic lineup conducted after the transaction and at trial as the individual from whom he purchased the cocaine. Finally, Agent Thornton testified that she and Agent Blanche went to the scene the week before trial and determined that the distance from the drug purchase to the school property was 143.5 feet.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial judge improperly denied his motion to continue the trial because his attorney was unprepared for trial. On the day of trial, June 26, 2003, defense counsel made an oral motion to continue the trial because he was unprepared, discovery had not been satisfied, and the defense motions to quash and suppress identification had not been heard. Defense counsel asserted that he was retained only two days before trial and needed additional time to prepare a defense. The prosecutor responded that the continuance was a delay tactic and that defendant had received open file discovery. *567 Further, the prosecutor argued that the transaction was recorded on videotape and that the matter was a simple case. After hearing argument on the motion to continue, the trial judge denied the motion.
A motion for a continuance must be made in writing within seven days prior to trial and allege the specific grounds upon which it is based. LSA-C.Cr.P. art. 707. Nevertheless, when circumstances producing the motion for continuance occur unexpectedly and there is no opportunity to prepare a written motion, there is a jurisprudential exception to the requirement for a written motion. State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 68, writ denied, 98-264 (La.6/19/98), 719 So.2d 481, citing, State v. Malinda, 95-292 (La.App. 5 Cir. 10/31/95), 663 So.2d 882, 886. Further, in the interests of justice, the trial court may grant a continuance upon written motion at any time after a contradictory hearing.
In State v. Winfrey, supra, this Court found that defendant had not preserved the denial of his oral motion for continuance because no unexpected circumstances arose to prevent the filing of the written motion. In State v. Malinda, supra, this Court found that defendant should have filed a written motion, but nonetheless reviewed the denial of the motion to continue in an abundance of caution.
Considering that defense counsel accepted the case two days before the case proceeded to trial, we find that there were no unexpected circumstances that prevented defendant from filing a written motion to continue. However, we will review the denial of the motion to continue in an abundance of caution, as in Malinda.
The granting of a continuance is discretionary on the part of the trial judge. LSA-C.Cr.P. art. 712; State v. Kelly, 96-903 (La.App. 5 Cir. 11/12/97), 704 So.2d 800, 807-808, writ denied, 97-3104 (La.4/9/98), 717 So.2d 1142. The denial of a motion for continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice. State v. Kelly, 704 So.2d at 807-808.
In support of his argument, defendant cites State v. Hayes, 95-1170 (La.App. 3 Cir. 3/6/96), 670 So.2d 683, State v. Brooks, 452 So.2d 149 (La.1984), and State v. Laugand, 99-1124, 99-1327 (La.3/17/00), 759 So.2d 34. In Hayes, the court reversed the defendant's conviction because the trial judge had not obtained a valid waiver of the defendant's right to counsel. In that case, the court appointed an attorney to represent defendant during voir dire, but the court limited the assistance to voir dire only. Throughout trial, defendant continually requested the assistance of counsel, but the trial judge refused his request.
In State v. Brooks, the Supreme Court held that the trial judge did not abuse his discretion in denying the motion to continue by retained counsel, who entered the case three days before trial. The Supreme Court noted that defendant's attorney had access to the files of his predecessor and that there was no showing that any new evidence or witnesses would have been found with additional time to prepare for trial. Specifically, the Brooks court stated that it is within the realm of a trial court's discretion "[t]o refuse to allow defendant to delay his trial by changing attorneys three days before trial, where the change was unnecessary and resulted in no prejudice to defendant...." Id. at 151.
On rehearing, the Brooks court stated that the denial of the continuance was within the court's discretion, but found that defense counsel's failure to participate on defendant's behalf denied the defendant' right to counsel. The conduct of counsel was so egregious in Brooks, that the Supreme Court noted that the failure *568 of defendant's attorney to participate in the trial was a constitutional deficiency that was discoverable by an inspection of the proceedings. Id. at 155.
Finally, in State v. Laugand, the Supreme Court reversed defendant's conviction because the trial judge erroneously denied a motion to continue on the basis that counsel was unprepared. The court noted that Laugand's counsel was "physically available to try the case" and "he did not stand mute after the trial court denied his motion for a continuance but crossexamined the State's witnesses and argued the case to jurors at the close of evidence." State v. Laugand, 759 So.2d at 36. However, the court found reversible error in the denial of the motion to continue because the record showed that defendant's counsel had not prepared and the trial court had to intervene to stop defendant's counsel from pursuing matters directly adverse to the defendant's interests. The court further found that defendant's counsel had failed to complete other tasks essential to the defendant's case. Id.
Unlike the defendant in Hayes, defendant in the present case was represented by counsel throughout the entire trial. And, unlike Brooks and Laugand, the defendant's attorney cross-examined witnesses at great length and did not pursue any theories that were adverse to defendant's interests. Rather, the instant case is similar to State v. Williams, 00-1850 (La.App. 5 Cir. 4/11/01), 786 So.2d 785, 791, writ denied, 01-1432 (La.4/12/02), 812 So.2d 666, in which this Court found no prejudice in the trial court's denial of a motion to continue. In Williams, defendant secured two continuances with his first attorney. The day of trial, defendant's new attorney requested a continuance and the matter was continued one day. The next day, counsel re-urged the motion on the basis that she had scheduling conflicts, that she was newly retained and needed additional time to prepare a defense. This Court held that the trial court did not abuse its discretion in denying the defendant's motion to continue, noting that there was a three-month period between the time of defendant's arraignment and the trial date in which defendant could have found other counsel. Further, the Williams court found that the record disclosed no prejudice to the defendant. Id. at 790-791.
In this case, the matter was continued twice on the defendant's motion between arraignment on April 10, 2003 and the trial date on June 26, 2003 when retained counsel Frank Larre orally moved to continue the trial. Similar to Williams, defendant had a two-month period between arraignment and trial to retain the counsel of his choice. Further, Mr. Larre was prepared to defend the case. He cross-examined the State's witnesses, and gave opening and closing statements that indicated he was familiar with the case. He crafted a defense that pointed out the weaknesses in the State's case, particularly the discrepancies between the testimony of Agent Thornton and Agent Blanche regarding measuring the distance between the transaction and the school. Further, the defense did not proffer any evidence to show how its strategy would have been any different had the trial court granted a continuance.
Under these circumstances, we find the trial court did not abuse its discretion in denying the motion to continue.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant contends that the trial judge improperly denied his motion to quash the bill of information because of the prejudicial delay between the offense and the filing of the bill of information. The *569 charged offense occurred on February 8, 2001 and the record contains several different dates regarding the defendant's arrest. In the motion to quash, defendant asserts that he was arrested for this offense in November of 1999. At the hearing on the motion to quash, the defendant stated that he was arrested in 2003, but that he had been in custody since 1999. At the hearing, the State responded that a warrant for the defendant's arrest was signed on May 17, 2001. Further, the State responded that the delay in the filing of the information was due to the fact that defendant "was not arrested and booked on this particular charge; therefore, the Jefferson Parish Narcotics Section did not send this report to the District Attorney's Office." Upon receiving the report, the State filed the bill of information. After these arguments, the trial judge denied the motion to quash.
According to LSA-C.Cr.P. art. 571, prosecution must be instituted within six years for a felony necessarily punishable at hard labor.[1] Since the charged offense is necessarily punishable at hard labor, the bill of information had to be filed within six years of February 8, 2001. Considering that the bill of information was filed on March 18, 2003, the prosecution was timely instituted under the statute.
A defendant's constitutional due process rights may still be violated by a pre-indictment delay, even though the prosecution is within the statutory time limits. United States v. Lovasco, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). But, the issue of a pre-indictment delay does not arise under the speedy trial provisions of the Louisiana or United States Constitutions, but under the fundamental rights to due process and a fair trial. State v. Schrader, 518 So.2d 1024, 1027 (La.1988); State v. Malvo, 357 So.2d 1084, 1085 (La. 1978). The proper approach in determining whether an accused has been denied due process of law through a pre-indictment or pre-arrest delay is to measure the government's justifications for the delay against the degree of prejudice suffered by the accused. State v. Malvo, 357 So.2d at 1087.
Louisiana courts have recognized that even substantial pre-indictment delays may not violate a defendant's due process rights. In State v. Schrader, supra, the Louisiana Supreme Court held that the defendant did not suffer a due process violation, despite the fact that 15 years had passed from the date of the offense until the date of defendant's arrest and indictment for murder. In reaching this conclusion, the Schrader court stated that the defendant did not show that the delay resulted in actual prejudice and that there was no showing the State had delayed the prosecution in order to gain a tactical advantage. State v. Schrader, 518 So.2d at 1027.
In State v. Lewis, 01-1084 (La.App. 5 Cir. 3/13/02), 815 So.2d 166, 177-178, writ denied, 02-1053 (La.11/15/02), 829 So.2d 424, this Court held that defendant's due process rights were not violated by a five and one-half year delay between the offense and the indictment. Even though the State's explanation for the delay was "vague," this Court found that there was no evidence that the State deliberately delayed to gain a tactical advantage over the defense. Further, this Court found that defendant had not shown that he was prejudiced by the delay.
*570 As in the foregoing cases, we find the defendant's due process rights were not violated by the twenty-five month period between the offense and the filing of the bill of information. The State explained that the delay was because the defendant had not been arrested on the present charges. Thus, there is no evidence that the State deliberately delayed to gain a tactical advantage over defendant. Further, the defendant did not suffer any prejudice. At the hearing, defendant asserted that the delay hampered his ability to find witnesses to provide a defense of simple possession and to establish an alibi defense. Considering that the transaction was captured on videotape, it is doubtful that defendant could have established an alibi or a simple possession defense.
Based on the foregoing, we find the trial judge did not err in denying defendant's motion to quash the bill of information.

ASSIGNMENT OF ERROR NUMBER THREE
The defendant contends he was denied effective assistance of counsel and due process of law because the trial judge erred in denying defendant written responses to discovery. Defendant acknowledges that he received open file discovery, but asserts that the discovery was not complete because the file did not contain "[p]hotographs, video tapes, and a supplemental police report." Specifically, defendant contends that he was prejudiced by the late disclosure of the supplemental police report, during Agent Thornton's testimony, which contained the distance between the school and the transaction.
According to LSA-C.Cr.P. art. 718, the court shall order the district attorney to permit the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce documents and tangible objects that are within the possession, custody, or control of the State, and that are intended for use by the State as evidence at the trial.
Discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony to permit the defense to meet the State's case, and to allow proper assessment of the strength of its evidence in preparing a defense. State v. Harris, 00-3459, pp. 8-9 (La.2/26/02), 812 So.2d 612, 617. In the event of a discovery violation, the court may order the party to permit the discovery, may grant a continuance, may order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate. LSA-C.Cr.P. art. 729.5(A). However, a conviction will not be reversed on the basis of the State's discovery violation unless prejudice is shown. State v. Harris, supra. Further, a trial judge has the discretion to choose an appropriate remedy for a discovery violation. State v. Bourque, 96-842 (La.7/1/97), 699 So.2d 1, 11, cert. denied, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998).
Defendant's chief complaint is that he was prejudiced by the State's late disclosure of the supplemental police report that contained the distance between the location of the transaction and Ames Elementary School. On direct examination at trial, Agent Thornton testified that the distance between the school and the transaction was 143.5 feet. During Agent Thornton's cross-examination, defense counsel inquired whether she had written a report detailing the distance she had measured. When she replied affirmatively, Mr. Larre stated he had not received the document. Agent Thornton replied that she had written the report the week before and she did not give it to the district attorney's office on the day she prepared *571 it. On redirect, Agent Thornton testified that the document was with the physical evidence that others brought to court that day. The State moved to admit the document into evidence because the defense had implied that the State withheld information from the defense.
The minute entry of May 9, 2003 indicates that the State provided open file discovery and it was "marked satisfied." On May 12, 2003, the defendant, through appointed counsel, filed a written motion for discovery seeking, among other things, the initial police report and to inspect, examine, test, or photograph, books, photographs, tangible objects, which were within the possession, custody, or control of the State, and which were intended for use by the State as evidence at the trial pursuant to LSA-C.Cr.P. art. 718. That motion was set for a hearing on May 19, 2003, but the defense requested a continuance for that day.
The motion was re-urged on the day of trial by defendant's retained counsel, Mr. Larre. The prosecutor then stated that copies of all of the documents in the State's file had been given to Mr. Larre's predecessor, Mr. Nolting, who had signed the State's file. However, Mr. Larre asserted that while his predecessor may have viewed the State's file, he did not. Following a discussion off the record, Mr. Larre requested open file discovery, or alternatively, that the prosecutor be precluded from presenting any evidence that was referenced in the Motion for Discovery.
The prosecutor then offered to provide open file discovery to Mr. Larre and to furnish copies of the police report and lab report. The court stated that the prosecutor was offering "open file," and it was up to Mr. Larre whether he read it or not. The court also stated that the prosecutor was making a copy of the police report. Mr. Larre objected to accepting open file discovery in lieu of having the State provide written responses.
Mr. Larre further objected because he had been told that items such as diagrams, pictures and measurements were not in the State's file and would be used at trial. The prosecutor responded that one or more officers had measured the location from the school to the transaction, and offered to show Mr. Larre these documents and photographs prior to the start of trial. The defense continued to object to the admission of items that were not in the State's file during open file discovery by Mr. Nolting, but the trial judge overruled the objection and denied the motions.
Based upon the above, we find that the defendant was not surprised by evidence regarding the distance between the school and the transaction. The pre-trial exchange reflects that Mr. Larre knew that the State would be presenting measurement evidence. Although Mr. Larre may not have seen the supplemental report before trial, the record reflects that Agent Thornton handed the report to him during her testimony, and Mr. Larre cross-examined Agent Thornton about the report. Further, the report, which is a one-page document containing approximately one and one-half paragraphs of text, is cumulative of Agent Thornton's testimony.
Thus, we find the defendant was not denied effective assistance of counsel or due process of law because of the denial of written responses to discovery.

ASSIGNMENT OF ERROR NUMBER FOUR
Defendant next contends that the State did not prove beyond a reasonable doubt that he is guilty of distribution of cocaine within 1000 feet of a school. He argues that the evidence was legally insufficient *572 to support his conviction because Agent Thornton's testimony regarding the distance between the transaction and the school was not credible.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tilley, 99-569 (La.7/6/00), 767 So.2d 6, 24, cert. denied, 532 U.S. 959, 121 S.Ct. 1488, 149 L.Ed.2d 375 (2001).
LSA-R.S. 40:981.3(A)(1) prohibits certain violations of the Uniform Controlled Dangerous Substances Law within 1000 feet of school property as follows:
(1) Any person who violates a felony provision of R.S. 40:966 through 970 of the Uniform Controlled Dangerous Substances Law while on any property used for school purposes by any school, within one thousand feet of any such property, or while on a school bus, shall, upon conviction, be punished in accordance with Subsection E.
....
C. For purposes of this Section:
(1) "School" means any public or private elementary, secondary, vocational-technical school, or any public or private college or university in Louisiana.
(2) "School property" means all property used for school purposes, including but not limited to school playgrounds, as well as any building or area owned by the state or by a political subdivision and used or operated as a playground or recreational facility and all parks and recreational areas administered by the office of state parks.
Defendant contends that his conviction should be reversed, citing State v. Hall, 02-1098 (La.App. 4 Cir. 3/19/03), 843 So.2d 488. However, in Hall there was no evidence of the distance from the school to the location where the transaction took place. In Hall, the State had introduced a map of the area showing defendant's location with respect to the school, but the map did not contain the distance from the school and no witness stated the distance. Thus, the Fourth Circuit court reversed the defendant's conviction.
In the present case, evidence was presented showing the distance between the school property and the location of the transaction. Agent Thornton testified that, sometime during the week before trial, she and Agent Blanche measured the distance between the property line of Ames Elementary School and the location of the drug transaction. According to Agent Thornton, the distance measured 143.5 feet. Additionally, Agent Thornton identified the location of the transaction at 6200 Field Street and the school property on an aerial photograph and testified that the distance between those points was 143.5 feet. Agent Thornton explained that the officers did not take the measurement in February 2001 because the school was "well within" 1,000 feet of the transaction.
Agent Blanche did not state a distance between the transaction and the school, but she said that Ames Elementary was "directly behind Field Street" and that some of the houses' backyards connected to the school's playground. Further, on defense counsel's request, Agent Blanche drew a diagram of the area and the location of the transaction.
Agent Thornton's testimony is the sole evidence of the distance between the transaction and the school. Although Agent Blanche testified about the location, she did not state a distance between the *573 school and the transaction. While the testimony of Agent Thornton and Blanche differed in regards to measuring the distance, the jury obviously believed Agent Thornton and resolved any conflicts in favor of the State.
Thus, we find that rational jurors, viewing the evidence in the light most favorable to the prosecution, could have concluded beyond a reasonable doubt that the defendant was guilty of distribution of cocaine within 1000 feet of a school.

ASSIGNMENT OF ERROR NUMBER FIVE
The defendant argues that the trial court improperly denied his motion to suppress the identification because the photographic lineup was suggestive and resulted in a substantial likelihood of misidentification.
A defendant challenging an identification procedure must prove that the identification was suggestive and that there was a substantial likelihood of misidentification. State v. Lowenfield, 495 So.2d 1245, 1253 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2259, 90 L.Ed.2d 704 (1986); State v. Mills, 01-110, p. 10 (La.App. 5 Cir. 6/27/01), 790 So.2d 102, 106-107.
Fairness is the standard of review for identification procedures and reliability is the linchpin in determining the admissibility of identification testimony. Manson v. Brathwaite, 432 U.S. 98, 113, 97 S.Ct. 2243, 2252-53, 53 L.Ed.2d 140 (1977). The factors to be considered in assessing reliability were initially set out in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), and approved in Manson v. Brathwaite, supra. They include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation. Any corrupting effect of a suggestive identification procedure is to be weighed against these factors. Manson v. Brathwaite, supra; State v. Martin, 595 So.2d 592, 595 (La.1992).
In determining whether the ruling on a defendant's motion to suppress is correct, an appellate court is not limited to the evidence adduced at the hearing on the motion to suppress but may also consider pertinent evidence given at the trial. State v. Burkhalter, 428 So.2d 449 (La. 1983); State v. Higgins, 01-368, p. 5 (La. App. 5 Cir. 10/17/01), 800 So.2d 918, 921, writ denied, 01-3267 (La.11/1/02), 828 So.2d 565, cert. denied, 538 U.S. 1038, 123 S.Ct. 2082, 155 L.Ed.2d 1070 (2003).
The defendant contends that the identification was unduly suggestive because his face is larger in his photograph than the faces of all of the men in the lineup. An identification procedure is suggestive if it unduly focuses a witness' attention on the suspect. Strict identity of physical characteristics among the persons depicted in a photographic array is not required; however, there must be sufficient resemblance to reasonably test the identification. State v. Bright, 98-398, p. 17 (La.4/11/00), 776 So.2d 1134, 1145. This determination is made by examining articulable features of the pictures or persons used such as height, weight, build, hair color, facial hair, skin color and complexion, and the shape and size of the nose, eyes, and lips. State v. Guillot, 353 So.2d 1005, 1008 (La.1977).
In State v. Johnson, 00-680 (La.App. 1 Cir. 12/22/00), 775 So.2d 670, writ denied, 02-1368 (La.5/30/03), 845 So.2d 1066, the court rejected the defendant's claim that *574 the photographic lineup was suggestive because his head was larger and the photograph was brighter than any of the other photographs. After examining the six-picture photo array, the court observed that the pictures were all the same size. The court noted that defendant's photograph was on the bottom row. Although his head was larger than the other two pictures on the bottom row, his head was the same size as the three pictures on the top row. The court stated that the differences in the sizes of the heads was explained by the fact the pictures of defendant and the three men on the top row showed only the head and neck for each man and were more of a close-up view than the other two pictures, which included the upper shoulders for those two men. Further, the court observed that the officers used a computer to select the photographs of men with similar characteristics. Even though defendant's photograph was slightly brighter, the court found that it was not noticeably different in skin color. After examining the array and considering the preparation of the lineup and the manner in which it was conducted, the court found that it was not suggestive. State v. Johnson, 775 So.2d at 679.
It does not appear that the photographic lineup in this case was suggestive because of the difference in the photographs. The defendant's photograph is in the middle of the top row. All of the photographs depict black men of similar age, weight, skin color, hairstyle and facial features. All of the pictures are the same size, but defendant's head is slightly larger than the heads of other men. However, as in Johnson, this difference seems to be due to the fact that the photograph was taken closer than the surrounding photographs.
At trial, Agent Thornton testified that her focus was to match the characteristics of the individuals in the photographs. Agent Thornton acknowledged that she printed out approximately one thousand photographs from the computer when compiling the lineup. At the suppression hearing, Agent Thornton stated that she could not find five photographs that were photographed in the manner of defendant's picture.
Defendant also asserts that the lineup was suggestive because Agent Blanche testified that Agent Thornton told her that the suspect was in the lineup. On re-direct examination at the suppression hearing, Agent Blanche testified that Agent Fleming had not indicated to her that the person on the video tape was in the lineup.
At the suppression hearing, Agent Thornton said that the only question she asked Agent Blanche when viewing the lineup was, "`Do you see the Defendant that sold you narcotics on theon this line-up.'"
Defendant argued that Agent Blanche's responses indicated that she had been told that the suspect was in the lineup. However, the prosecutor replied that the defense had misunderstood Agent Blanche, and the trial judge agreed. The suppression hearing and trial testimony of both officers supports the judge's conclusion that Agent Blanche was not told that the suspect was in the lineup. We find that the identification was not suggestive.
In addition, we find there was no substantive likelihood of misidentification. It is the likelihood of misidentification that violates due process, not the mere existence of suggestiveness. State v. Every, 96-185, p. 9 (La.App. 5 Cir. 7/30/96), 678 So.2d 952, 957. Applying the factors in Manson v. Brathwaite, supra, there was not a substantial likelihood of misidentification. Agent Blanche's testimony at the suppression hearing and at trial demonstrates *575 that she had an ample opportunity to view the person who sold the narcotics. She said that he approached her car after signaling for her to stop and again when he returned with the cocaine. The videotape of the incident introduced at trial supports her testimony. Further, Agent Blanche testified that only two transactions are conducted per day. Agent Blanche immediately identified defendant's photograph when she viewed the lineup on February 12, 2001, only four days after the transaction. Agent Blanche testified at the hearing and at trial that she was very certain of her identification when she chose defendant's photograph from the lineup. Therefore, we find that the trial judge did not err in denying the motion to suppress identification.

ASSIGNMENT OF ERROR NUMBER SIX (ERROR PATENT)
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). One error patent is presented for review.
The transcript of original sentencing reflects that defendant entered a "plea of not guilty" to the multiple bill, while the commitment is silent. Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La. 1983); State v. Haynes, 96-84 (La.App. 5 Cir. 6/25/96), 676 So.2d 1120, 1123. Accordingly, we remand the matter to allow the trial judge to correct the commitment to reflect that defendant denied the allegations in the multiple bill.
In accordance with the above, we affirm defendant's conviction and remand the matter to the trial court for correction of the commitment as discussed above.

AFFIRMED AND REMANDED.
NOTES
[1] This article was amended after February 8, 2001, the date of the instant offense. However, these amendments do not pertain to defendant's case.