858 So.2d 68 (2003)
STATE of Louisiana
v.
Prince FRANKLIN.
No. 03-KA-287.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 2003.
*69 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Margaret E. Hay, Kenneth Bordelon, Ralph C. Cox, Assistant District Attorneys, Gretna, LA, for State of Louisiana, Plaintiff/Appellee.
Jane L. Beebe, Gretna, LA, for Prince Franklin, Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, WALTER J. ROTHSCHILD and EMILE R. ST. PIERRE, Pro Tempore.
WALTER J. ROTHSCHILD, Judge.
Defendant, Prince Franklin, was indicted by a grand jury on June 14, 2001 and charged with second degree murder in violation of LSA-R.S. 14:30.1. He pled not guilty and filed motions to suppress his statements, identification and evidence. The motions were denied after a hearing on December 13, 2001. Defendant proceeded to trial on June 18, 2002. After a three-day trial, the jury found defendant guilty as charged. Defendant was sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence.
FACTS
At approximately 8:20 p.m. on May 6, 2001, Officer Oliver Silvey was dispatched to the Villa D'Ames apartment complex in Marrero. When he arrived, he saw a white female, later identified as Deena Wilty, lying face up in the parking lot with a pool of blood around her. He called for an ambulance and secured the scene. The victim was transported to West Jefferson Medical Center where she was pronounced dead. An autopsy revealed she died of a single gunshot wound to the head, or specifically the right cheek.
During the investigation, the police discovered an eyewitness to the shooting, Lakayana Dennis. Ms. Dennis, who lived in an apartment in the Villa D'Ames complex, stated she was standing on her porch when she saw the victim get out of a burgundy-colored mini-van taxi cab. The victim was immediately approached by three black males selling drugs. Seconds later, Ms. Dennis saw defendant, whom she identified as "Pedie," run up to the *70 victim and shoot her in the head. Ms. Dennis called 911.
Based on the information obtained from Ms. Dennis later that night, the police prepared a photographic lineup. Ms. Dennis was shown the lineup and identified defendant as the person who shot the victim. The photographic lineup was also shown to another eyewitness, Lynn Nelson, who identified defendant as the person she saw running away from the scene. Ms. Nelson, who also lived at the Villa D'Ames apartment complex, testified that she heard a gunshot and saw defendant running away from the scene.
Defendant was arrested on the night of the murder at 1:00 a.m. He was advised of his rights, and he subsequently gave three separate statements. He initially denied any involvement or knowledge of the shooting but later admitted he shot the victim. Defendant explained that he shot the victim because she had robbed him of approximately $1,000-$1,400 one to two months earlier. Defendant then assisted the police in locating the gun used in the murder. The gun, a Taurus .357 magnum, was found and seized. Ballistic tests confirmed the gun matched the fragments removed from the victim.
DISCUSSION
Defendant argues the trial court erred in denying his motion to suppress his three statements because they were not knowingly, intelligently and voluntarily made. Defendant alleges he was coerced into making the statements because of the tactics used by the police. He contends he was deprived of food, cigarettes and sleep during the seven-hour period that he gave the three statements. He also points out that the police refused to let him leave after he gave his first statement denying any involvement or knowledge in the murder. Defendant maintains the continued interrogation that ultimately led to his confession was threatening and coercive in nature and, thus, he did not voluntarily waive his rights. He further suggests he was threatened with the charge of first-degree murder if he did not confess.
Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda[1] rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement or promises. LSA-R.S. 15:451; State v. Comeaux, 93-2729 (La.7/1/97), 699 So.2d 16, 29, cert. denied, 522 U.S. 1150, 118 S.Ct. 1169, 140 L.Ed.2d 179 (1998); State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866; State v. Smith, 95-734 (La.App. 5 Cir. 1/20/96), 668 So.2d 1260, 1267. A determination of voluntariness is made on a case-by-case basis, depending on the totality of the facts and circumstances of each situation. State v. Quest, supra at 780.
The admissibility of a confession or statement is a determination for the trial judge and his conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. Id. In reviewing the trial court's ruling, the evidence presented at trial may be considered in addition to the evidence presented at the hearing on the motion to suppress. State v. Fisher, 97-1133 (La.9/9/98), 720 So.2d 1179, 1182.
*71 At the hearing on the motion to suppress the statements, Detective Donald Meunier testified that defendant gave three statements. According to Detective Meunier, defendant was first advised of his Miranda rights when he was arrested at his residence at approximately 1:00 a.m. on the night of the murder. He was again advised of his rights at 1:25 a.m. through a rights of arrestee form after he was transported to the Detective Bureau and before he gave any statement. Defendant initialed each right on the form and signed the bottom of the form twice indicating he had been read his rights and that he wished to waive his rights. At trial, Detective Meunier testified that defendant had completed tenth grade and understood his rights.
Defendant gave his first statement at 2:00 a.m. At the beginning of the statement, Detective Meunier reviewed each of defendant's rights. Defendant indicated he understood his rights. Defendant also acknowledged that no promises or threats had been made to him and no pressure or coercion had been used against him. In his first statement, defendant admitted being at the Villa D'Ames apartments earlier that night between 8:00-8:30 p.m. but denied any involvement in the murder. He stated he and three friends were going to the movies for an 8:30 p.m. show when he heard a gunshot and saw a white lady lying in the parking lot. He explained he ran away from the area, got into his friend's car and went to the movies. The statement ended at 2:14 a.m.
Defendant gave a second statement at 5:29 a.m. In the three hours between the first and second statement, Detective Meunier stated he continued to talk to defendant in the interview room. Detective Meunier confronted defendant with facts and evidence, including the eyewitness, that suggested defendant committed the murder. At the beginning of the second statement, Detective Meunier reminded defendant of his rights and that he retained his rights which defendant indicated he understood. Defendant then proceeded to give a statement wherein he admitted shooting the victim and explained why he did it. He also described the murder weapon and indicated he gave it to a friend to hold after the shooting. The second statement lasted 11 minutes.
Two and a half hours later, at 7:56 a.m., defendant gave a third statement. The time between the second and third statement was spent trying to locate the murder weapon. At the beginning of the third statement, Detective Meunier again reminded defendant of his rights and that he retained his rights. Defendant's third statement revolved around the murder weapon and outlined the search for the murder weapon and its ultimate location.
Defendant does not argue that he was not properly advised of his rights but rather alleges the seven-hour duration of the interrogation and the police tactics of depriving him of sleep, food and cigarettes throughout the interrogation were coercive. Thus, defendant maintains he did not give the statements voluntarily.
Detective Meunier testified that he made no promises to defendant and used no threats, force or coercion in obtaining any of the three statements. He explained defendant was given something to drink between his first and second statement but was not given anything to eat. Detective Meunier could not recall if defendant used the bathroom between the first and second statement but stated defendant would have been allowed to use the bathroom if he had asked.
Notably, defendant did not testify at the motion to suppress hearing. There is nothing in the record that indicates defendant ever requested sleep or food during *72 the entire interrogation process and there is no evidence that defendant was sleepy at the time he gave his statements. Additionally, nothing in the statements by defendant suggests that he was in any way mistreated during the entire interrogation period. Defendant never asked for a lawyer and never indicated that he wanted to stop the interview.
In State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 923, cert. denied, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000), the Louisiana Supreme Court found no merit in defendant's claim that his statements were involuntary. In Thibodeaux, defendant arrived at the detective bureau at 7:45 p.m. He was advised of his rights and executed a rights form at 8:10 p.m. He gave his first statement at 10:20 p.m. in which he denied any involvement in the victim's death. Defendant gave a second statement at 2:45 a.m. after giving a polygraph in the interim which indicated he was being deceptive. He then gave a third statement at 4:21 a.m. in which he fully confessed to the murder. In the interim, additional interviews between the defendant and the detective took place. Defendant claimed he was psychologically coerced into making a full confession because the detectives supplied details of the crime in between statements and through the power of suggestion he "parroted" the details in his confession. The Louisiana Supreme Court noted there was nothing in the record that showed defendant's will was overborne by the detectives.
The defendant in Thibodeaux was questioned over an eight-hour period and gave three statements. It was not until the last statement that defendant confessed to the crime. The Louisiana Supreme Court found nothing involuntary about defendant's statements despite continued interviewing of defendant by detectives between the recorded statements.
Also, in State v. Blank, 01-564 (La.App. 5 Cir. 10/10/01), 804 So.2d 132, 136-138, this Court determined defendant's confession were free and voluntary despite defendant's claim that he was deprived of food, cigarettes and sleep during a lengthy 12½-hour interrogation. This Court noted that defendant did not ask for any food during the entire interview and that he never indicated he was hungry. This Court further stated that the detectives did not promise to give defendant food if he confessed. It was noted that defendant did receive something to drink on several occasions.
Regarding the issue of sleep deprivation in Blank, defendant indicated he was sleepy within the first three hours of the interview. At one point, defendant put his head on the table when the officers were out of the room. This Court found defendant did not request sleep but only stated he was tired from not doing anything and from working late. This Court further noted the detectives did not promise defendant they would allow him to sleep if he confessed. This Court concluded that the detectives did not deprive defendant of sleep. This Court reasoned defendant was advised of his rights but he did not invoke his right to remain silent and at no point did he state he wanted to stop the interview because he wanted sleep.
Likewise, in the present case, defendant never requested food or sleep. He was never promised food or sleep in exchange for his confession. Defendant was advised of his rights twice and was reminded of his rights before each statement. He did not invoke his right to remain silent or state, at any time, that he wished to stop the interview. Based on the totality of the circumstances, we fail to find that defendant's *73 confession was induced or coerced from lack of food or sleep.
In his appellate brief, defendant also claims he was deprived of cigarettes. There is nothing in the record to suggest defendant was a smoker or that he requested a smoking break and was denied same.
Defendant further maintains he was threatened with being charged with first-degree murder if he did not confess. The rights of arrestee form that defendant executed acknowledging he had been advised of his rights and that he wished to waive his rights indicated defendant was being charged with "murder" in violation of LSA-R.S. 14:30, which is the first degree statute. At the motion to suppress hearing, Detective Meunier was asked if defendant was told he might be charged with first degree murder. Detective Meunier explained that defendant was advised he was being charged with "murder." He did not know if defendant was specifically told he might be charged with first degree murder. Detective Meunier recalled some discussion about charging defendant with first degree murder but believed the discussion was between the detectives. Detective Meunier stated defendant was not told his penalties would be lighter if he gave a statement.
In State v. Hopkins, 35146 (La.App. 2 Cir. 11/2/01), 799 So.2d 1234, 1237 the Second Circuit found defendant's statement to be free and voluntary despite possible discussions with defendant of the penalties for the different grades of homicide. Defendant claimed his confession was induced because he was told if he gave a statement manslaughter could be an option and that the death penalty was the consequence of a first degree murder conviction. The court noted the officers did not make any promises of a light or special sentence to induce defendant to give a statement. The record showed defendant was aware of the charges against him at the time of the statement. The court explained that "any discussion of the penalties for the different grades of homicide was superficial and was not done in a threatening manner. There were no promises that things would go better or that the charge would be reduced in exchange for a confession." State v. Hopkins, 799 So.2d at 1237.
Likewise, defendant was aware he was being charged with murder. The gradation of murder does not appear to have been discussed. Detective Meunier testified that he never told defendant that his penalty would be lighter if he confessed. At the beginning of defendant's first and second statements, he was specifically advised he was being charged with "murder." Nothing in the record indicates defendant was induced to confess by a promise of a lighter charge or penalty.
Based on the totality of the circumstances, we find defendant's statements were free and voluntary.
This assignment of error is without merit.
The record was also reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). No errors were discovered which require corrective action by this Court.
DECREE
Accordingly, for the reasons assigned herein, the conviction and sentence of defendant, Prince J. Franklin, are hereby affirmed.
AFFIRMED.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).