WALTER J. ROTHSCHILD, Judge.
|20n October 30, 2008, the defendant, Branded. T. Scie, was charged by a Jefferson Parish grand jury indictment with: the second degree murder of Heriberto Eyello Montoya, in violation of LSA-R.S. 14:30.1 (“Count One”); the armed robbery of Isaías Lopez while armed with a firearm, in violation of LSA-R.S. 14:64 and 14:64.3 (“Count Three”); the armed robbery of Peter Pham while armed with a firearm, in violation of LSA-R.S. 14:64 and 14:64.3 (“Count Five”); and the attempted second degree murder of Devon Martin, in violation of LSA-R.S. 14:27, 14:30.1 (“Count Six”).[1]
| ^Defendant pled not guilty at arraignment. Defendant filed various pre-trial motions including a Motion to Suppress the Statement(s) and a Motion to Suppress the Identification which were heard and denied on February 10, 2010.[2]
Before trial, the State dismissed Count Three as to the defendant. Defendant was severed from the other six co-defendants charged in the bill of indictment, and trial was scheduled to commence on May 18, 2010. Defendant proceeded to trial on May 18-19, 2010, and was found guilty by a 12-person jury as charged as to Counts One and Five, and not guilty as to Count Six.
The trial court sentenced the defendant on May 26, 2010, to life imprisonment on Count One, and to 50 years of imprisonment on Count Five, to run consecutively to Count One, and without the benefit of probation, parole, or suspension of sentence. On that same date, defendant filed a motion for new trial which was subsequently denied. The defendant filed a timely motion for appeal. After the order for appeal had been entered, defendant filed a second motion for new trial on October 4, 2010, based on newly discovered evidence. On November 3, 2010, the trial court noted that it could not rule on defendant’s second motion for new trial because it was divested of jurisdiction; however, if it were to consider the motion, the trial court stated that it would deny same.

FACTS

With regard to Count One, Second Degree Murder:
Deputy Gerald Favalora, with the Jefferson Parish Sheriffs Office, testified that on August 30, 2008, he was conducting a roaming patrol of District Two when he was dispatched to the 900 block of West Monterey Court in response to an |4aggravated battery by shooting and an attempted armed robbery. When Deputy Favalora arrived on the scene that afternoon, he observed a man who had sustained a gunshot wound lying on ground in front of an apartment complex.[3] Once the *1086 EMTs arrived on the scene, a positive identification of Heriberto Montoya, the victim, was made. Deputy Favalora then secured the scene and waited for the detectives to arrive.
Daniel Velasquez testified that around 2:00 p.m. on August 30, 2008, Velasquez and his roommate, Heriberto Montoya, were at their apartment when there was a knock on the front door. Upon opening the door, Velasquez observed someone running in between the two apartment buildings, so he and Montoya followed. Once in front of the building, Velasquez saw the man who had knocked on his door run across the street while a second man, 5 and a half feet tall, thin, with long dreadlocks, holding a .22 caliber rifle stood in the parking lot waiting for them. Another man with a short haircut then came from around the corner of the building holding a handgun. The man with the rifle and dreadlocks then demanded they give him their money. After Montoya put his hands in the air, the man with the dreadlocks demanded their money again and then shot Montoya with his rifle. When Velasquez tried to run, the man with the rifle yelled at the second man that was pointing the handgun at Velasquez to shoot. While attempting to run for help, Velasquez was shot in the shoulder.[4] Velasquez ran to a nearby store for assistance. Velasquez was rushed to the hospital where he remained for ten days. While at the hospital Velasquez spoke to the police and provided them with a description of the perpetrators. The officers then showed Velasquez various photographic line-ups 15from which Velasquez identified the man with the handgun that had pointed the gun at him. (Drevon James).[5]
William Smith testified that on the night of August 30, 2008, he was at his house at 925 West Monterey Court when defendant, Brandell Scie, stopped by. Smith left to walk his girlfriend home and when he returned, the defendant and Drevon James were sitting outside of his house. The defendant and James asked Smith for bullets for a “.22,” which he did not give to them because he had none.[6] Smith then left to go to the store and upon walking back he saw the defendant on the opposite side of the street standing underneath a carport. When Smith got back to his house he heard gunshots coming from the direction he had just walked from. Smith then observed James run across the street and into his house, which is located next door to Smiths’.
With regard to Count Five:
Devon Martin is a mechanic at Peter’s Automotive, owned by Peter Pham, on La-palco Boulevard.[7] According to Martin, on the evening of October 1, 2008, he and Pham were repairing a car when they were robbed by a man in a clown mask holding a chrome revolver. The tall, *1087 stocky man in the mask pointed the gun at Martin and Pham demanding money.[8] Pham walked inside the office with the masked robber following, so Martin ran across the street to “Vinnie’s restaurant” to call the police. While attempting to run across the street, Martin saw a “muzzle flash from the left hand side” of the building and heard a bullet ricochet off the building.
| fiPeter Pham, owner of Peter’s Auto Repair, testified that on October 1, 2008, he was at his shop with Martin when they were robbed by a masked man holding a silver gun. The robber demanded Pham’s money, and Pham gave him the $150 he had in his pocket. The robber then forced Pham into the office and demanded more money, but upon learning that Pham had no more cash in the office, left the building.
Jefferson Parish Sheriff’s Office Deputy Alexander Gorman testified that on October 1, 2008, he was dispatched to Peter’s Auto Repair in relation to an armed robbery. Deputy Gorman secured the scene, reported a description of the suspects to all units, along with a description of the vehicle, a gray trailblazer, alleged to have been used in the perpetration of the crime. Deputy Gorman then testified that after leaving the scene, he was patrolling the Monterey Court area when he observed the gray trailblazer. Deputy Gorman conducted a felony stop of the vehicle which contained three males and two females. The males were later identified as Jacoby Dixon, Brandell Scie, and Bradley Edwards. Dixon had a stainless steel revolver on his person and a .22 caliber rifle was also recovered from the vehicle.[9] Deputy Gorman read defendant his Miranda[10] rights and placed him under arrest.[11] Deputy Gorman further testified that when conducting the felony stop he did not smell marijuana, and that since the detective bureau conducted the search of the vehicle, he was not aware whether any drugs were found.
Detective John Carroll of the Jefferson Parish Sheriffs Office, robbery unit, testified that on October 1, 2008, he participad ed in the investigation of the armed 17robbery that occurred at Peter’s Auto Repair. Specifically, Detective Carroll interviewed the defendant in relation to the armed robbery. Detective Carroll testified that his interview of the defendant was the second one the defendant had participated in that evening. The defendant had previously been interviewed by Detective Meunier, of the homicide division, in relation to the murder of Montoya, in which defendant was a suspect. (Id.) According to Detective Carroll, Detective Meunier had filled out the Rights of Ar-restee form with the defendant during his interview so Detective Carroll used the same form and verbally confirmed that the defendant still understood his rights, was still electing to waive his rights, and that he was still willing to provide a statement.[12] After reviewing the previously executed Rights of Arrestee form with de *1088 fendant, Detective Carroll informed the defendant that he was being interviewed in connection to an armed robbery. The defendant acknowledged that he understood his rights and indicated that he wished to give a statement.[13] Detective Carroll testified that he did not threaten, or coerce the defendant and that the defendant never asked for an attorney prior to giving his statement. Detective Carroll further testified that the defendant did not appear to be under the influence of drugs or alcohol.[14] At the conclusion of his statement, defendant told Detective Carroll that he had more information regarding the statement he had given to Detective Meunier pertaining to the murder of Montoya. Thus, Detective Meunier was brought into the room to conduct a second interview while Detective Carroll observed.
laFirearms examiner for the Jefferson Parish Sheriffs Office, Meredith Acosta, testified that with regard to the homicide, Item No. H31707-08, she examined two Winchester .22 caliber fired cartridge casings and one unknown caliber lead-like projectile. And in connection with the armed robbery, J860-08, she examined three Remington .22 caliber fired cartridge casings, and a Ruger model 10/22, .22 caliber rifle. After firing the Ruger .22 caliber rifle and comparing it to the unknown caliber lead-like projectile, she testified that while the test fired material had the same characteristics as the unknown lead-like projectile, she could not make a determination as to whether it was actually fired from the Ruger .22 caliber rifle. The spent shell casings from the test were also compared to the spent casings under Item No. H31707-08 and J860-08, and it was determined that all five spent casings submitted for examination were fired from the Ruger .22 caliber rifle.
In August of 2008, Detective Meunier was a detective in the homicide division of the Jefferson Parish Sheriffs Office. Detective Meunier was called out to West Monterey Court on August 30, 2008, to investigate the scene of a homicide. Upon arrival at the scene, Detective Favalora was present and had already secured the scene. The victims had already been transported to the hospital so Detective Meunier began' processing and cataloging the evidence at the scene.[15] After interviewing various neighborhood residents, Detective Meunier was able to gain information as to the identity of one of the perpetrators (Drevon James). James was arrested and provided a statement to police, identifying the defendant as the second perpetrator. Detective Meunier learned of the defendant’s arrest from the JPSO robbery division at which time Detective Meunier interviewed defendant in connection with the murder of Montoya. Detective Meunier advised defendant |9of his rights from a Rights of Arrestee form, which defendant initialed and signed, and upon waiving said rights, defendant elected to give a statement.[16] Detective Meu- *1089 nier testified that defendant did not appear to be under the influence of drugs or alcohol, nor did he request an attorney. Further, Detective Meunier did not see defendant talking on his cell phone in the interview room prior to providing his statement.
After obtaining defendant’s first statement, Detective Meunier testified that he did not believe defendant’s account of the events based on other contradictory information known at the time. Upon conclusion of the interview, Detective Meunier transferred defendant to Detective Carroll in the robbery division. After speaking with Detective Carroll, defendant indicated he had additional information regarding the homicide and wished to make another statement so Detective Meunier interviewed him for a second time.[17] Again Detective Meunier testified that he did not believe defendant’s statement to be credible because it was contradictory to the evidence and testimony previously ascertained in the case.
The State rested and the defense called Courtney Green, defendant’s girlfriend, to the stand. Green testified that on October 1, 2008, she received a phone call from the defendant stating that he had been arrested. The defendant told Green that “they were questioning him” and then told her to get him a lawyer before the phone disconnected. Green testified that she and the defendant’s mom | ^searched for an attorney and once they found someone they paid him but never heard from him again.
Lastly, the defendant, Brandell Scie, testified that on August 30, 2008, he was getting ready to evacuate due to Hurricane Gustav. Before leaving with his family for ■Alabama, the defendant went with his “godbrother Ronald” to Ronald’s house to smoke marijuana. The defendant then left for Alabama later that evening and remained there until the end of September 2008. Defendant was then arrested on October 1, 2008. Defendant testified that on said date, his friend Divena picked him up in the seventh ward with another female, Yaneka, and drove back to Divena’s house where they smoked marijuana. They then left Divena’s house and went to pick up defendant’s cousin Bradley Edwards and Jacoby Dixon. Defendant testified that when they picked up Edwards and Dixon he did not see any guns on them or in the vehicle. Divena then dropped defendant, Edwards and Dixon off at the Auto Zone. Defendant stayed there while Edwards and Dixon went to Peter’s Auto Repair to rob the store. After defendant observed Dixon and Edwards “running around the corner,” he flagged down Divena and got into her car. Defendant testified that he did not observe Edwards or Dixon with guns or a mask. Shortly thereafter they were pulled over by the police and taken to the detective bureau. At the bureau, Detective Meunier *1090 played a statement Drevon James had given regarding the murder. Defendant then testified that he told Detective Meunier he was innocent but gave a statement anyways because that’s what “he wanted.”
After giving his first statement, Detective Meunier walked out of the interview room and the defendant called his girlfriend, Green, to have her contact a lawyer. While on the phone, Detective Carroll came into the room and took the phone away from him. When Detective Carroll asked what he was doing on the | nphone, defendant responded “trying to get a lawyer.” Defendant testified that Detective Carroll should have known he wanted a lawyer when he said he was on the phone. The defendant testified that he then gave a second statement to Detective Carroll during which he confessed to the crime because he felt threatened by him. Detective Carroll then brought Detective Meunier back in the room to revisit the statement the defendant gave about the homicide and began using intimidation techniques, such as name calling, and physical threats, so the defendant told them what they wanted to hear. The defendant went on to testify that none of the statements he gave were true and that he was high on marijuana and pills when he gave the first two statements.

ASSIGNMENT OF ERROR NUMBER ONE

The Trial Court erred in denying the defendant’s motion to suppress his statements.

DISCUSSION

Defendant argues that the trial court erred in denying his motion to suppress his statement because he was under the influence of drugs at the time his statements were obtained and was also forced to make the statements after repeatedly asking for an attorney. Moreover, defendant asserts that the trial testimony of Green substantiates defendant’s position that he attempted to find a lawyer, yet continued to be interrogated by the authorities.
The State responds that at the hearing on the motion to suppress statements, Detectives Meunier and Carroll testified consistently with their trial testimony. Specifically, the detectives testified that the defendant waived his rights freely and voluntarily and elected to give three statements. Further, the defendant did not testify, nor did he present witnesses at the motion to suppress hearing, rather, at trial defendant stated for the first time that he gave his statements while under the |! ¿influence of marijuana, and because he was threatened. Thus, the State asserts that because the defendant was advised of his rights on numerous occasions, confirmed that he understood his rights and wished to waive them, never asked for an attorney, and did not appear to be under the influence of any drugs, his statements were freely and voluntarily made pursuant to a valid and voluntary waiver.
At the suppression hearing on February 10, 2010, Detective Meunier testified that he interviewed the defendant on the evening of October 1, 2008, in relation to the murder of Montoya.[18] Detective Meunier advised the defendant of his Miranda rights from a Rights of Arrestee form prior to interviewing the defendant. The defendant indicated that he understood his rights, initialed next to each of the listed rights, and then signed the waiver of rights. When the defendant was read his rights and voluntarily waived them, Detective Meunier testified that he did not *1091 threaten the defendant, or promise anything to him in exchange for his testimony, and that the defendant did not appear to be under the influence of drugs. After taking defendant’s statement, and after the defendant was interviewed by Detective Carroll of the robbery unit regarding an unrelated incident, Detective Meunier interviewed the defendant for a second time during the early morning hours of October 1, 2008. Detective Meunier testified that he did not threaten or coerce the defendant into giving the second statement, nor did the defendant appear to be under the influence of drugs. Also, prior to the two tape recorded statements of the defendant, Detective Meunier went over the defendant’s Miranda rights for a second time while being tape recorded. Detective Meunier also testified that at no time did the defendant indicate that he wished to speak to a lawyer.
Detective Carroll also testified at the hearing on defendant’s motion to suppress. Detective Carroll took the defendant’s statement regarding the armed 11srobbery at Pete’s Auto on October 1, 2008. The statement taken by Detective Carroll was between the two statements taken by Detective Meunier. Prior to taking defendant’s statement, Detective Carroll used the Rights of Arrestee form previously used by Detective Meunier to advise the defendant of his Miranda rights. (Id.) According to Detective Carroll, the defendant indicated that he understood his rights and freely and voluntarily waived them prior to giving his statement. At no time did the defendant ask to speak to an attorney nor was he intoxicated at the time. Moreover, the defendant was not threatened, coerced, or promised anything in return for his statement. Finally, Detective Carroll testified that he never observed the defendant on his cell phone at any time.
The trial court denied defendant’s motion to suppress upon finding that defendant’s statements were, beyond a reasonable doubt, given freely and voluntarily after advice of rights, with no testimony having been presented to contradict same.[19]
A review of the record initially indicates that the defendant waived his right to appeal the denial of his motion to suppress his confessions and the admissibility of the challenged statements. While the defendant filed a written motion to suppress his statements alleging that they were not freely and voluntarily made because he was under the influence of marijuana and also due to the fact that the detectives failed to advise him of his right to counsel, the defendant did not object to the admission of his three statements at trial.
Generally, to preserve an issue for appeal, a party need not enter a contemporaneous objection to the court’s ruling on a written motion. LSA-C.Cr.P. art. 841 B. However, where a defendant initially files a pre-trial motion objecting to the introduction of certain evidence, if at trial he specifically agrees to the | ^introduction, he has waived his prior objection and loses the right to present the issue on appeal. State v. Gaal, 01-876, p. 22 (La.App. 5 Cir. 10/17/01), 800 So.2d 938, writ denied, 02-2835 (La.10/3/03), 855 So.2d 294; See also State v. Butler, 30,798 (La.App. 2 Cir. 6/24/98), 714 So.2d 877, 894, writ denied, 98-2217 (La.1999), 734 So.2d 1222; State v. Dillon, 93-707 (La.App. 5 Cir. 1/24/94), 631 So.2d 1171.
In State v. Gregory, 05-628, p. 4 (La.App. 5 Cir. 3/28/06), 927 So.2d 479, 482, *1092 and State v. Onezime, 01-1018, p. 10 (La.App. 5 Cir. 2/26/02), 811 So.2d 1033, 1043, writ denied, 02-1099 (La.3/21/03), 840 So.2d 535, this Court found that the defendant waived any right to raise issues concerning the admissibility of the challenged statement, on appeal, when he raised no objection to the introduction of the statements at trial, even though he previously objected to the statement’s admissibility in his motion to suppress and objected to the denial of the motion.
However, this Court in both Gregory and Onezime considered the merits of the defendant’s claim because of the constitutional issues it raised. Therefore, we will consider the merits of defendant’s assignment of error.
The State has the burden of proving the admissibility of a purported confession or statement by the defendant. State v. Arias-Chavarria, 10-116, p. 11 (La.App. 5 Cir. 9/28/10), 49 So.3d 426, 433, writ denied, 10-2432 (La.2/25/11), 58 So.3d 460 (citing LSA-C.Cr.P. art. 703(D)). Before an inculpatory statement made during a custodial interrogation may be introduced into evidence, the State must prove beyond a reasonable doubt that the defendant was first advised of his Miranda rights, that he voluntarily and intelligently waived his Miranda rights, and that the statement was made freely and voluntarily and not under the influence of fear, intimidation, menaces, threats, inducement, or promises. Arias-Chavarria, 10-116 at 11-12, 49 So.3d at 433, (citing State v. Franklin, 03-287, p. 4 (La.App. 5 Cir. 9/16/03), 858 So.2d 68, 70, writ denied, 03-3062 (La.3/12/04), 869 So.2d 817; LSA-R.S. 15:451); State v. Blank, 04-0204, pp. 9-10 (La.4/11/07), 955 So.2d 90, 103, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).
A determination of voluntariness is made on a case-by-case basis, depending on the totality of the facts and circumstances of each situation. Testimony of the interviewing police officer alone may be sufficient proof that a defendant’s statements were freely and voluntarily given. Arias-Chavarria, 10-116 at 12, 49 So.3d at 433 (citing State v. Mackens, 35,350, p. 13 (La.App. 2 Cir. 12/28/01), 803 So.2d 454, 463, writ denied, 02-0413 (La.1/24/03), 836 So.2d 37).
Moreover, in determining whether the trial court’s ruling on a defendant’s motion to suppress is correct, an appellate court is not limited to the evidence adduced at the suppression hearing, but may also consider the evidence presented at trial. State v. Huntley, 08-125, p. 6 (La.App. 5 Cir. 5/27/08), 986 So.2d 792, 796 (citing State v. Brumfield, 96-2667, p. 43 (La.10/20/98), 737 So.2d 660, 683, cert. denied, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999)).
Intoxication only renders a statement involuntary when the intoxication is of such a degree that it negates the defendant’s comprehension and renders him unconscious of the consequences of what he or she is saying. State v. Quest, 00-205, p. 6 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 780, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866. A determination of whether the intoxication existed and was of a degree sufficient to vitiate the voluntariness of the defendant’s confession is a question of fact to be determined by the trial court. Id. A diminished intellectual capacity alone does not vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Pugh, 02-171 (La.App. 5 Cir. 10/16/02), 831 So.2d 341, 352. A statement obtained from the defendant by direct or implied promises, or by the exertion of improper influence must be considered involuntary and, therefore, inadmissible. State v. Gregory, 05-628 (La.App. 5 Cir. 3/28/06), 927 So.2d 479, 483 (citing State v. McLelland, 03-498, pp. 7-8 (La. *1093 App. 5 Cir. 10/15/03), 860 So.2d 31, 35, writ denied, 03-3372 (La.3/26/04), 871 So.2d 347).
The admissibility of a confession or statement is a determination for the trial judge and the judge’s conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession or statement are entitled to great weight and will not be overturned unless unsupported by the evidence. Id. (citing Franklin, supra). In addition, a trial court’s determination on the motion to suppress should not be disturbed on appeal, unless it is clearly wrong. State v. Addison, 08-461, p. 12 (La.App. 5 Cir. 2/10/09), 8 So.3d 707, 716.
In the present case, we fail to find that the trial court clearly erred in denying the motion to suppress the defendant’s statements, despite the fact that the defendant claims that he was under the influence of marijuana and ecstasy at the time. The defendant never informed detectives that he had taken drugs that day, and even if the defendant was under the influence of drugs, we fail to find that his alleged intoxication was sufficient to vitiate the volun-tariness of his statement. Detectives Meunier and Carroll both testified regarding the taking of defendant’s statement at trial. Both of their testimonies are substantially similar to the testimonies given at the suppression hearing. Specifically, at the suppression hearing, the detectives testified that defendant appeared to understand the rights he was advised of, and that the defendant voluntarily waived his rights. Also at the suppression hearing, both detectives testified that defendant did not appear intoxicated, or drugged in any way, and that the defendant was calm, | |7communicating clearly, with “cogent thought patterns,” and appeared to understand the questions he was asked.[20]
Also, at trial, Detectives Meunier and Carroll both testified that the defendant understood his rights before each statement was obtained and that the defendant willingly waived them. The detectives further testified at trial that the defendant did not appear to be on drugs or intoxicated, and that he was able to communicate clearly. Although defendant testified at trial for the first time that he was under the influence of marijuana at the time he gave his first and second statements, the trial judge clearly credited the officers’ testimony over that of defendant. We fail to find this determination to be an abuse of discretion.
Moreover, even to the extent that defendant was under the influence of marijuana prior to his arrest, we find from the testimony and from defendant’s statements that defendant was able to understand the rights explained to him and voluntarily gave the statement. Defendant gave details in his statement that were corroborated, and he did not appear to have difficulty responding to the questioning. Based on the foregoing, we fail to find that the trial court abused its discretion by denying defendant’s motion to suppress the statement.
Secondly, we find no error in the trial court’s denial of the motion to suppress the defendant’s statements despite the fact that defendant contends that he requested an attorney.
The United States Supreme Court found that the Fifth Amendment gives a criminal suspect subject to a custodial interrogation the right to consult an attorney during questioning. State v. Imbra- *1094 guglio, 08-64, p. 10 (La.App. 5 Cir. 5/27/08), 987 So.2d 257, 263 (citing Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Law enforcement officers are required to explain the right to |,san attorney to a criminal suspect before beginning the custodial interrogation initiated by law enforcement officers after the suspect has been taken into custody or otherwise deprived of their freedom of action in any significant way. Id., 08-64 at 10, 987 So.2d at 263. The safeguards regarding the criminal suspect’s Miranda right to an attorney are triggered by both the custodial setting and an official interrogation. Id.
Once the criminal suspect knowingly and voluntarily waives his Miranda rights, law enforcement may continue to question a suspect unless or until he clearly requests an attorney. Imbraguglio, 08-64 at 11, 987 So.2d at 263. The determination of whether the accused actually invoked his right to counsel is an objective inquiry. Davis v. United States, 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994); State v. Cooper, 36,830 (La.App.2d Cir.3/5/03), 839 So.2d 995, writ denied, 03-0999 (La.10/10/03), 855 So.2d 330. Invocation of the Miranda right to counsel “requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.” Davis v. United States, supra; Cooper, supra. If a defendant makes a reference to an attorney that is ambiguous or equivocal in that a reasonable police officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, cessation of questioning is not required. Davis v. United States, supra; Cooper, supra. A suspect must “unambiguously request” counsel “sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney” in order to cease custodial questioning. Davis v. United States, supra; Cooper, supra. Once a criminal suspect requests to have an attorney present, the suspect is not subject to any further interrogation by law enforcement officers until an attorney has been made available to the suspect, unless the suspect initiates further | ^communication, exchanges or conversations with law enforcement. Imbraguglio, 08-64 at 11, 987 So.2d at 264.
In Imbraguglio, the defendant claimed that his statements should be suppressed because he was denied his right to counsel. Imbraguglio, 08-64 at 10, 987 So.2d at 263. The police officer, who conducted all of the defendant’s interviews, testified that the defendant never asked for an attorney. The defendant verbally acknowledged his rights and appeared to understand them. The defendant also placed his initials by each right on the form and signed it. The defendant’s signature indicated that he had read his rights, waived them, voluntarily answered questions, and gave a statement. Imbraguglio, 08-64 at 11, 987 So.2d at 264.
At the suppression hearing in that case, the defendant testified that the officer told him that he was not under arrest and refused to let him call a lawyer. Imbraguglio, 08-64 at 11-12, 987 So.2d at 264. The defendant claimed that when he asked to a call a lawyer again he was told that he did not need one. According to the defendant, the officers also continued to ask him questions after he told them that he was not going to say anything. Id., 08-64 at 12, 987 So.2d at 264.
This Court found that the trial court did not abuse its discretion in denying the motion to suppress after finding the officers’ testimonies more credible than the defendant’s testimony. Id.
In the present case, the defendant gave three taped statements. Contrary to defendant’s arguments, the record reflects *1095 that before each statement, defendant was advised of his Miranda rights. While at the detective bureau, and prior to giving his first statement, Detective Meunier advised the defendant of his Miranda rights from a Rights of Arrestee form. The defendant indicated that he understood his rights, initialed next to each of the listed rights, and then signed the form acknowledging a waiver of his rights. Detective Meunier testified that he did not | gpthreaten the defendant, or promise anything to him in exchange for his testimony. Detective Meunier also testified that defendant was also re-advised of his Miranda rights prior to his giving his third statement.
Detective Carroll also testified that prior to defendant’s second statement, Detective Carroll used the Rights of Arrestee form previously used by Detective Meunier to advise the defendant of his Miranda rights. According to Detective Carroll, the defendant indicated that he understood his rights and freely and voluntarily waived said rights prior to giving his statement. Also, as evidenced and memorialized on the tapes and transcripts from the interviews conducted in this matter, prior to proceeding with each tape recorded statement, Detectives Meunier and Carroll verbally reviewed defendant’s signed Rights of Arrestee form. Defendant’s recorded statement also reflects that defendant understood his rights and voluntarily gave his statement.
At trial, the defendant testified that pri- or to his interview with Detective Carroll, he used his cell phone to call his girlfriend to find him an attorney, which she corroborated at trial. Further, when Detective Carroll came into the interview room, the defendant testified that:
Q: ... When did you ask for a lawyer?
A: When I got on the phone.
Q: When you got on the phone and—
A: Yeah. And when he [Detective Carroll] came and ask me, what was you doing? I told him I was on the phone trying to get a lawyer.
Q: You told who that?
A: The — Sergeant Carroll.
The defendant claims that Detective Carroll then took away his phone and failed to honor his request for an attorney. Even if defendant’s testimony could be 12i construed as an invocation of his right to counsel, both Detectives Meunier and Carroll testified at the suppression hearing and at trial that defendant never asked for an attorney, nor was defendant observed using his cell phone. Further, the detectives agreed that had the defendant requested an attorney, questioning would have immediately ceased.
When the trial court is presented with conflicting testimony, the credibility of the witnesses is a matter within the sound discretion of the trial court. State v. Snyder, 97-226 (La.App. 5 Cir. 9/30/97), 700 So.2d 1082, 1087. Here, the trial judge clearly credited the detectives’ testimony over that of defendant and his girlfriend and we fail to find that such a determination constitutes an abuse of discretion.
Based on the foregoing, we find that defendant knowingly and intelligently waived his Miranda rights, and made three voluntary statements to police. Therefore, we find no abuse of discretion in the trial court’s ruling denying defendant’s motion to suppress the statements.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO

The Trial Court erred in not granting a continuance so that an alibi witness could testify at the trial.

*1096
DISCUSSION

The defendant contends that the trial court erred in not granting a continuance so that a newly found alibi witness, Ronald Bivens, could testify at trial. The defendant further argues that a continuance was warranted because defense counsel had difficulty locating Bivens, only first having learned that Bivens could provide alibi testimony the day before trial.
|22The State responds by asserting that defendant failed to establish that Bivens’ testimony would be material. Further, the defendant did not establish that there was any probability that Bivens would even be available if the trial were continued. Thus, the State contends that the requirements set forth in LSA-C.Cr.P. art. 709 were not satisfied.
The day before trial, May 17, 2010, defense counsel advised the trial court:
Mr. Scie has a possible alibi witness by the name of Ronald Bivens. I’ve had an opportunity to speak to Mr. Bivens regarding this case. I have requested that he come to court and testify. I spoke to Mr. Bivens last night, Mr. Bivens told me that he was working in Pensacola, that he would be leaving this morning and he would be out of town. When I asked him when he would be available to testify, he couldn’t give me any time or any date which was better for him.
Also, I requested the name and address of his employer so that I could try and call someone at his work to see if he could excused (sic) to come and testify. However, Mr. Bivens did not call me back with that information.
Mr. Bivens told me he did not have a phone where I could contact him, and my investigator has gone a couple of times to an address where Mr. Bivens supposedly lives, the mortgage is in his name. I’m going to send an instanter subpoena there. However, I doubt that he will receive it because he told me he would be in Pensacola working. So I would ask this Court for a continuance to try and obtain Mr. Bivens for trial.
In response to said request for a continuance, the State argued that it had not received a notice of alibi witness, nor did it sound as if Bivens was willing to cooperate, and thus objected to defendant’s request as untimely. The trial court went on to question defense counsel regarding her request for a continuance based on LSA-C.Cr.P. arts. 727[21] and 709, to which defense counsel asserted that she was l^only able to speak to Bivens two days before trial, and that Bivens told her “he could or would possibly be an alibi witness, but that he would rather author an affidavit than *1097 come to court and that he certainly would not be able to come to court because he was working out of town.”
The trial court denied defendant’s motion to continue trial, finding as follows:
All right. Considering the — that the requirements of article 727 cannot be met, and I really doubt that even if they could be met that the defendant would turn out to be a legitimate alibi witness, but also considering these uncertainties and the requirements or the factors contained within article 709, I’m not going to grant a continuance.
We’ve had this matter set for trial several times in the past and discussed it in pretrial conferences quite a few times at the past — in the past. And we are on the eve of, literally, of picking a jury and I’m still not comfortable that this — or I’m still not confident that the witness would testify as to facts that would provide a defense. I’m certainly not of the belief that he will be available at any time that the trial would be continued. It sure — certainly doesn’t sound like it.
And I have doubts as to the diligence used, not by you particularly, Ms. La-Cambra, by — because I don’t doubt that at all, but the — I doubt that you were given information that you could have acted on in a timely fashion regardless. And that alone tells me something about the probabilities of the testimony of this witness and the probabilities of getting him here and so forth.
All things considered, I don’t even think this is a close call and I’m not going to grant a continuance for this reason, based on the factors and those two articles.
A motion for a continuance must be made in writing and allege the specific grounds upon which it is based. LSA-C.Cr.P. art. 707. As a general rule, a motion for a continuance must be made within seven days prior to trial. Nevertheless, in 124the interests of justice, the trial court may grant a continuance upon written motion at any time after a contradictory hearing. Id.
The denial of an oral motion for continuance leaves nothing for the appellate court to review. State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 68, writ denied, 98-264 (La.6/19/98), 719 So.2d 481 (citing State v. Malinda, 95-292 (La.App. 5 Cir. 10/31/95), 663 So.2d 882, 886). Nevertheless, there is a jurisprudential exception to the requirement for a written motion where the circumstances producing the motion occur unexpectedly and there is no opportunity to prepare the motion. State v. Bartley, 03-1382, p. 4 (La.App. 5 Cir. 3/30/04), 871 So.2d 563, 567, writ denied, 04-1055 (La.10/1/04), 883 So.2d 1006 (citing State v. Winfrey, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 68, writ denied, 98-264 (La.6/19/98), 719 So.2d 481)(holding that defendant had not preserved the denial of his oral motion for continuance because no unexpected circumstances arose to prevent the filing of the written motion)(citing State v. Malinda, 95-292 (La.App. 5 Cir. 10/31/95), 663 So.2d 882, 886)(where this Court held that defendant should have filed a written motion but reviewed the denial of the motion to continue in an abundance of caution).
In the present case, there is no evidence in the record that a written motion for continuance was filed or that an oral motion was made seven days in advance of trial. Considering that defense counsel was only able to locate and speak to her potential alibi witness for the first time two days prior to trial, we find that the circumstances producing defendant’s motion occurred unexpectedly, and thus, we will address the merits of defendant’s assignment of error.
*1098 According to LSA-C.Cr.P. art. 712, “[a] motion for continuance, if timely filed, may be granted, in the discretion of the court, in any case if there is good ground therefor.” The Louisiana Supreme Court has consistently held that the Indecision whether to grant or refuse a motion for a continuance rests within the sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. State v. Davenport, 08-463, pp. 3-4 (La.App. 5 Cir. 11/25/08), 2 So.3d 445, 447, writ denied, 09-0158 (La.10/16/09), 19 So.3d 473 (citing State v. Manning, 03-1982, p. 30 (La.10/19/04), 885 So.2d 1044, 1077, cert. denied, 544 U.S. 967, 125 S.Ct. 1745, 161 L.Ed.2d 612 (2005)). In addition, the Louisiana Supreme Court generally declines to reverse convictions even on a showing of an improper denial of a motion for a continuance absent a showing of specific prejudice. Id., 08-463 at 3-4, 2 So.3d at 447. This Court has also recognized that the denial of a motion for continuance is not grounds for reversal absent abuse of discretion and a showing of specific prejudice. Id., 08-463 at 4, 2 So.3d at 447 (citing Bartley, 03-1382 at 5, 871 So.2d at 567).
Additionally, LSA-C.Cr.P. art. 709 provides that a motion for continuance based upon the absence of a witness must state the facts to which the absent witness is expected to testify, facts and circumstances showing a probability that the witness will be available at the time to which the trial is continued, and facts showing due diligence used in an effort to procure attendance of the witness. See State v. Davenport, 445 So.2d 1190 (La.1984); and State v. Rose, 557 So.2d 409 (La.App. 4 Cir.1990).
Here, the Public Defender’s Office was appointed to represent defendant on November 3, 2008. On March 22, 2010, trial of this matter was continued and rescheduled for the week of May 17, 2010. And on May 12, 2010, the trial date of May 17, 2010, was again affirmed. In addition to having approximately one and a half years to prepare, defendant was unable to show that Bivens would ever be | ¡^available to testify if a continuance were granted. Specifically, defense counsel informed the court that when she asked Bivens when he would be able to testify “he couldn’t give me any time or any date which was better for him.” Further, defense counsel did not show that Bivens would appear if the trial were continued, as evidenced by the fact that Bivens could not provide defense counsel with a phone number where he could be contacted; moreover, he stated “he could or would possibly be an alibi witness,” and then stated that he would rather author an affidavit rather than come to court because he worked out of town. Finally, the defendant did not provide the facts to which Bivens was expected to testify. Thus, we find that defendant was unable to meet the requirements of LSA-C.Cr.P. art. 709. See State v. Neville, 524 So.2d 1338 (La.App. 1 Cir.1988), writ denied, 531 So.2d 263 (La.1988).
Under these circumstances, we fail to find that the trial court abused its discretion in denying the motion to continue. This assignment of error has no merit.

ASSIGNMENT OF ERROR NUMBER THREE

The Trial Court erred by not granting the motion for new trial based upon newly discovered and material evidence.

DISCUSSION

In his third assignment of error, defendant contends that the trial court erred in denying his motion for new trial based on the discovery of new material evidence pertaining to Detective Carroll, the detective who obtained one of defendant’s statements.
*1099 The State responds that defendant’s third assignment of error is not properly before this Court because defendant filed his motion for new trial after the order of 127appeal had been entered, divesting the trial court of jurisdiction to hear defendant’s 'motion.
On May 26, 2010, defendant’s timely filed motion for appeal was granted by the trial court. LSA-C.Cr.P. art. 916 provides that the jurisdiction of the trial court is divested and that of the appellate court attaches, upon the entering of the order of appeal, and thereafter the trial court has no jurisdiction over the matter except for certain listed actions not applicable here.
The motion for new trial filed by defendant on October 4, 2010 was filed after the trial judge entered the order of appeal. However, as the motion was based upon allegations of new and material evidence that notwithstanding the exercise of reasonable diligence by defendant was not discovered before or during trial pursuant to LSA-C.Cr.P. art. 851(8), we find the motion was timely filed as it was filed within one year of the verdict.
LSA-C.Cr.P. art. 853 provides in pertinent part:
When the motion for a new trial is based on ground (3) of Article 851, the motion may be filed within one year after verdict or judgment of the trial court, although a sentence has been imposed or a motion for a new trial has been previously filed; but if an appeal is pending the court may hear the motion only on remand of the case. (Emphasis added.)
The trial court correctly determined that it was divested of jurisdiction to consider the motion for new trial filed after the entry of the appeal order. However, in accordance with the above provision, we find that defendant is entitled to have his timely filed motion properly heard, and we hereby remand this case to the trial court for a hearing on defendant’s motion for a new trial. See State v. Shannon, 360 So.2d 193 (La.1978)(where a defendant timely filed in the trial court a motion for a new trial based upon allegations of new and material evidence after the trial judge had ordered an appeal, case would be remanded to trial court |Mfor hearing on defendant’s motion) and State v. Vampran, 491 So.2d 1356 (La.App. 1 Cir.1986), writ denied, 496 So.2d 347 (La.1986)(whereupon entry of first order of appeal of defendant’s second-degree murder conviction, trial court was divested of jurisdiction to hear subsequent motion for new trial alleging discovery of new and material evidence, in the absence of a remand by the court of appeal; however, defendant was entitled to have timely filed motion properly heard, and thus was entitled to remand for hearing on motion.)

ERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5 Cir.1990). The following matters were discovered:
The jury found defendant guilty as charged as to Count Five, armed robbery while using a firearm, a violation of 14:64 and 14:64.3. However, the sentencing minutes and transcript indicate that defendant was sentenced based on 14:64 only.
The enhanced penalty provision under LSA-R.S. 14:64.3 provides in pertinent part:
“When a dangerous weapon used in the commission of the crime of armed robbery is a firearm, the offender shall be imprisoned at hard labor for an additional period of five years without benefit of parole, probation, or suspension of sentence. The additional penalty imposed shall be served consecutively to the sen *1100 tence imposed under the provisions of R.S. 14:64.”
Based upon the failure to sentence defendant based on this provision, we find that defendant’s sentence on Count 5 must be vacated and remanded to the trial court for resentencing in accordance with 14:64.3, with instructions indicating that the trial court should clearly set forth the portion of the sentence enhanced under LSA-R.S. 14:64.3. See State v. McGinnis, 2007-1419 (La.App. 3 Cir. 4/30/08), 981 So.2d 881; State v. King, 06-1903 (La.10/16/07), 969 So.2d 1228, and State v. White, 42,725 (La.App. 2 Cir. 10/24/07), 968 So.2d 901.
Further, we note that the trial court failed to advise defendant of the prescriptive period for post-conviction relief as provided in LSA-C.Cr.P. art. 930.8. Specifically, LSA-C.Cr.P. art. 930.8(A) states that a defendant has two years after the judgment of conviction and sentence has become final to file for post-conviction relief.
It is well-settled that if a trial court fails to advise, or provides an incomplete advi-sal, pursuant to LSA-C.Cr.P. art. 930.8, the court may correct said error by informing the defendant of the applicable prescriptive period for post-conviction relief. See State v. Roche, 05-237 (La.App. 5 Cir. 4/25/06), 928 So.2d 761, 767, 768, writ denied, 06-1566 (La.1/8/07), 948 So.2d 120; State v. Thomas, 10-220 (La.App. 5 Cir. 11/9/10), 54 So.3d 678, 688; and State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535.
Thus, by means of this opinion, we hereby correct this error and inform defendant that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of LSA-C.Cr.P. art. 914 or 922.

DECREE

Accordingly, for the reasons assigned herein, the convictions of defendant Bran-dell T. Scie are hereby affirmed. Further, the sentence imposed on Count 1 is affirmed. However, for the stated reasons, the sentence on Count 5 is vacated and the case is remanded for resentencing in accordance with La. R.S. 14:64.3. In addition, this case is remanded to the trial court for a hearing of the motion for a |snnew trial, reserving to the defendant the right to appeal an adverse ruling on that motion. Finally, by means of this opinion, we inform defendant of the prescriptive period within which he may file an application for post-conviction relief.

CONVICTIONS AFFIRMED; SENTENCE ON COUNT 1 AFFIRMED; SENTENCE ON COUNT 5 VACATED; CASE REMANDED FOR RESENTENC-ING ON COUNT 5 AND REMANDED FOR HEARING ON MOTION FOR NEW TRIAL

. Defendant was not charged on Counts Two and Four. Charged as co-defendants in the bill were Drevon Q. James (Counts One, Two, Three and Four), William Smith (Counts Two and Three), Elvin Ascension-Calcano (Count Four), Jacoby Dixon (Count Five), and Bradley Edwards (Count Five).

. The record does not reflect that defendant’s pre-trial motion to suppress the evidence was disposed of prior to trial. However, it is well established that a defendant waives all pending motions by permitting trial to proceed without raising the issue that his pre-trial motions were neither heard nor ruled upon. State v. Thomas, 08-1171, p. 5 (La.App. 5 Cir. 4/28/09), 13 So.3d 595, 599 (citing State v. Fletcher, 02-707, p. 5 (La.App. 5 Cir. 12/30/02), 836 So.2d 557, 559, writ denied, 03-0409 (La.10/10/03), 855 So.2d 334.)

.Dr. Fraser Mackenzie, a forensic pathologist, testified that he performed an autopsy on the victim, Montoya, which revealed the cause of death to be a gunshot wound to his left upper abdomen. The manner of Montoya’s death was classified as a homicide.

. On cross-examination, Velasquez testified that he saw the man with the rifle and dreadlocks shoot Montoya but did not know whether the man with the rifle, or the man with the handgun, had shot him because his back was turned as he was running for help, when he was shot from behind.

. Velasquez testified that he was unable to identify the man with the rifle from the photographic line-up shown to him by the detectives, however, when asked whether he got a good look at him, Velasquez testified that he had, and described the man with the rifle as "five and a half feet tall, skinny, with dreadlocks, long hair.”

. On cross-examination, Smith testified that he did not see James or the defendant with a gun on the day in question, however, he had seen the .22 caliber rifle around the neighborhood and when defendant asked for .22 bullets he assumed it was for the .22 caliber rifle.

. Martin testified that he had worked with the defendant before at Lightning Oil and Lube as well as Peter's Automotive.

. On cross-examination, Martin testified regarding his description of the masked perpetrator, i.e. tall and stocky, which would not fit the defendant's description.

. At trial it was stipulated that if Deputy Connie Moore were to testify, she would testify to processing the scene at Peter's Auto Repair. She would further testify that she recovered three spent .22 caliber casings in the rear yard.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Deputy Gorman testified that he was aware that there was a warrant out for defendant’s arrest with regard to an unrelated murder.

. The State offered into evidence the Rights of Arrestee form filled out by the defendant and completed with Detective Meunier on October 1, 2008 at 10:05 p.m.

. Detective Carroll testified that on the day he gave his statement he had dreadlocks.

. Defendant's tape recorded statement was played for the jury. In his statement, the defendant admitted to his involvement in the robbery of Peter's Auto Repair. The defendant stated that he, Dixon and Edwards talked about robbing Peter's so they had their friend Divena drop them off around the corner. It was agreed that Dixon would enter the shop in a clown mask with a revolver while Edwards and the defendant waited outback. The defendant stated that he had the rifle and shot it in the air three times to scare the people in the shop. When Dixon came running out of the shop, they all ran and eventually met up again with Divena who picked them up in her trailblazer.

. Detective Carroll recovered, among other things, .22 caliber casings from the scene.

. When defendant executed the Rights of Arrestee form, Detective Donald Clogher was also present. Defendant’s first tape recorded statement was played for the jury. In his *1089 statement given to Detective Meunier regarding the murder of Montoya, defendant stated that he was walking to the store with Drevon James when James told him he needed money. James followed a Hispanic male and asked for his money. According to the defendant, the Hispanic male was being followed by another Hispanic male carrying an axe. James fired three shots, hitting one of them with his assault rifle. Defendant was in possession of a ,9mm handgun at the time but never used it and walked away once the shots had been fired.

. Defendant's third tape recorded statement was played for the jury. In his third statement, the defendant stated that he and James decided to rob someone Hispanic. The defendant and James saw a Hispanic man walk in between the buildings and when he came back out he was followed by another Hispanic man holding an axe. The defendant stated that he was armed with a .22 caliber rifle at the time and that James had a handgun. The defendant then demanded their money and then shot the man carrying the axe.

. The Rights of Arrestee form indicates that Detective Clogher was present during the reading and waiving of the rights but did not participate in the interview with the defendant.

. The defendant did not testify and presented no witness at the hearing on defendant’s motion to suppress statements.

. At the suppression hearing, on cross-examination, Detective Meunier was asked whether the defendant’s eyes seemed red or irritated, to which Detective Meunier responded: "I noted nothing like that at the time.”

. It should be noted that the record does not reflect that the State filed discovery motions requesting notice of the defendant's intent to offer an alibi defense. Thus, the State’s contention that defendant's notice of alibi was untimely appears to lack merit.
LSA-C.Cr.P. art. 727 provides, in pertinent part:
A. Upon written demand of the district attorney ... the defendant shall serve within ten days ... written notice of his intention to offer a defense of alibi.
[[Image here]]
D. Upon failure of either party to comply with the requirement of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense.
E. For good cause shown, the court may grant an exception to any of the requirements of Subsections A through D of this Section.